PITTSBURGH COAL WASHER CO. v. SLAG ROCK MACH. CO. et al.

(District Court, W. D. Pennsylvania. July 17, 1922.)

No. 428.

Patents ⬳328—1,154,401, for molten metal conveyor, valid and infringed.

The Hurst patent, No. 1,154,401, for a conveyor carrying pig iron molds for receiving molten metal from a blast furnace, *held* valid. Claims 1 and 2 *held* infringed, and claims 3 and 4, which are specific, not infringed.

In Equity. Suit by the Pittsburgh Coal Washer Company against the Slag Rock Machine Company and Willis T. Hurst. Decree for complainant.

Charles M. Clarke, of Pittsburgh, Pa., for plaintiff.
Winter & Brown, of Pittsburgh, Pa., for defendants.

BUFFINGTON, Circuit Judge. This case concerns mechanical conveyors adapted to receive molten metal from blast furnaces into a series of moving molds of a pattern to form pig iron, carry the metal forward as it congeals, discharge it, return the metal mold again to the furnace mouth, and continuously repeat the process. Reference to the case, in this circuit, of American Casting Machine Co. v. Pittsburgh Coal Washer Co., 237 Fed. 590, 150 C. C. A. 472, will give a general view of the art and obviate present repetition. From the date of the patents involved in that case, which were granted in 1903 and 1905, no further improvement in the molten metal conveyor art seems to have taken place until the present patent No. 1,154,401, applied for March 20, 1915, by Willis T. Hurst, assignor to the Pittsburgh Coal Washer Company, was granted September 21, 1915 The improvement of Hurst, as we gather it, was in giving a mobile flexibility to the bridge members on both sides of the conveyor, between the inner ends of which bridge members the mold was attached. This bridge member flexibility of both lateral and vertical play was effected by locating their ends in a horizontal slot. It changed the rigidity of the old type of conveyor into a mobile flexibility, which allowed an outlet to the contraction and expansion incident to the intense heat of the molten metal conveyed. Incidentally, the mode of construction of attachment being made between the link and the supporting bridge by means of the horizontal slot was a form of construction which allowed easy replacement and permitted the machine to be made in pieces which could be easily assembled or taken apart. Hurst's specification thus set forth these features and advantages:

"The present invention has for its object to provide a chain construction composed of twin links mounted upon supporting rollers and connected by pivoting pins, the links having supplemental bridge pieces loosely mounted between the links. * * * The links as thus made are thus capable of being assembled in pairs without the necessity of having special right and left side members, it being merely necessary to reverse one of the links in position to provide a companion link for each pair, and to make a continuous chain of any desired length. * * * The bridge member, being of one integral piece of metal, is mounted between the links 2 by the outwardly extending lugs *10* with a fairly loose fit, and the lugs themselves preferably extend slightly beyond the other face of the links, whereby to provide for an ample range of movement, either by the links laterally, or by the bridge member in any direction, under the strains of expansion or contraction, while at the same time maintaining the bridge member in substantially fixed relation to the link members."

Validity of the patent is not denied, but it is sought to narrow the construction of its claims by reason of the alleged preceding art. We find, however, nothing in such preceding art which calls for a narrower construction of the claims than their plain words and meaning suggest. The patent to Hunt and King, No. 683,604, of 1901, did not involve the art of hot metal conveying and was not intended to counteract expansion and contraction. As for the link in use by the Shenango Company, the rigidity of its supporting bridge member was effected and meant to be secured by four bolts, and any play caused by the loosening of the bolts was wholly accidental, and in effect contrary to the functional purpose of the whole machine. Protection for the specific device of Hurst was secured by his third and fourth claims, which, it will be noted, are limited by the element in his link of "a longitudinal slot in its middle portion," but his first and second, which read as follows:

"I. The combination with a pair of longitudinally slotted links, of an arched supporting bridge member having laterally extending lugs engaging said slots.
"II. The combination with a pair of longitudinally slotted links, of a supporting bridge member provided with a lateral integral supporting attachment and having laterally extending lugs engaging said slots"

—do not thus restrict the slot to the middle portion of the link, and when the defendant places its slots not in the middle of the link but in a lug on top of them, it does not avoid infringement, for it still secures both horizontal and vertical play for the ends of its supporting bridge member, and thus obtains the free play and flexibility incident to Hurst's disclosure. Moreover, its lugs or protuberances, which restrict the movement of the supporting member to such movements as are permissible in operation, are in the mechanical equivalents of defendant's lugs.

While, of course, Hurst could not patent the function or principle of mobile flexibility, yet his device being the first to show a use of such flexibility of adjustment in contact with the rigidity of attachment of the prior molten metal art and having shown in his device how that principle could be successfully applied, and having in addition to claims three and four for his specific device been granted the broader and generic claims 1 and 2, these latter claims must be held to cover such mechanical equivalents of his specific device as coact in the same way

to secure the flexible mobility of molten metal conveyors which he disclosed to the art in his specification.

A decree will therefore be prepared, that the claims 1 and 2 of the patent are valid and infringed, and claims 3 and 4 are not infringed.